**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:22-cv-20238

UNITED STATES OF AMERICA,

Plaintiff,

vs. FILED *EX PARTE*

THE PROMISSORY NOTE WITH A PRINCIPAL AMOUNT OF $5.7 MILLION EXECUTED ON DECEMBER 19, 2019 BY 8787 RICCHI LLC PAYABLE TO 87STE LENDING LLC, THE RELATED DEED OF TRUST SECURING THE NOTE RECORDED ON DECEMBER 23, 2019, AS WELL AS ANY MODIFICATIONS THERETO, ANY OTHER INDEBTEDNESS SECURED BY THE SAME DEED OF TRUST, AND ALL RIGHTS AND REMEDIES AVAILABLE UNDER BOTH THE NOTE AND DEED OF TRUST,

Defendant.
_______________________________________________/

**_EX PARTE_ APPLICATION FOR POST-COMPLAINT RESTRAINING ORDER PURSUANT TO 18 U.S.C. § 983(j)(1)(A) AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

The United States of America hereby moves this Court *ex parte*, pursuant to 18 U.S.C. § 983(j)(1)(A), for a restraining order to preserve the Defendant Asset in this action.

## I. Introduction

On January 20, 2022 the United States filed a Verified Complaint for Forfeiture *In Rem* in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"), Dkt. No. 1 ("the Complaint"). The Complaint is related to three other cases in this district that have all been consolidated before Judge Marcia G. Cooke. *See* 1:20-cv-23278; 1:20-cv-23279; 1:20-cv-25313.The Government respectfully submits that this action, and this motion, should likewise be before Judge Cooke, given that the conduct complained of arises from the same scheme and involves closely related facts and circumstances.

The Complaint in this action seeks forfeiture of the promissory note with a principal amount of $5.7 million executed on December 19, 2019 by 8787 Ricchi LLC payable to 87STE Lending LLC (the "Promissory Note"), the related deed of trust securing the note recorded on December 23, 2019, as well as any modifications thereto, and any other indebtedness secured by the same deed of trust (collectively, the "Deed of Trust"), and all rights and remedies available under both the Promissory Note and Deed of Trust (collectively, the "Defendant Asset"). The Promissory Note and Deed of Trust were executed in December 2019 in connection with the sale by Optima Stemmons LLC of an office tower complex in Dallas, Texas ("Stemmons Towers") to 8787 Ricchi LLC[1] for approximately $6.5 million. The sale included a loan from an Optima entity, 87STE Lending LLC, for $5.7 million secured by Stemmons Towers. The loan is represented by the Promissory Note and Deed of Trust.

The Complaint alleges that the Defendant Asset is forfeitable to the United States, and includes facts sufficient to support a finding of probable cause that the Defendant Asset is traceable to violations of U.S. law and specified unlawful activity, including violations of 18 U.S.C. §§ 1956, 1957, 2314, and 2315, and that it was involved in one or more money laundering offenses in violation of 18 U.S.C. §§ 1956 and 1957. The specified unlawful activity serving as the basis for those claims includes fraud by or against a foreign bank (18 U.S.C. § 1956(c)(7)(B)(iii)); the transportation, receipt, concealment, possession, sale, and disposal of misappropriated money in international commerce (18 U.S.C. §§ 2314 and 2315); and conspiracy to commit those offenses.

The majority owners of PrivatBank, Ihor Kolomoisky and Gennadiy Boholiubov, caused hundreds of millions of dollars of loans to be issued to entities they owned through fraudulent misrepresentations. They then laundered the proceeds of that misappropriation through a network of companies, transferring the funds into U.S. accounts in the names of entities created by their Miami-based associates, Mordechai Korf and Uriel Laber. Korf and Laber incorporated Optima Stemmons LLC in Delaware in 2008, with a mailing address at 200 South Biscayne Boulevard, Miami, Florida, and Korf was listed as the President and Director of the company. On May 23, 2008, Optima Stemmons LLC completed the purchase

[1] 8787 Ricchi LLC is not implicated by the allegations in the Complaint.

of Stemmons Towers for approximately $7.6 million. Korf signed the paperwork associated with the purchase.

In 2019, Optima Stemmons sold Stemmons Towers to 8787 Ricchi LLC for approximately $6.5 million. To complete the sale, Korf and Laber created a new entity, 87STE Lending LLC, which is wholly owned by Optima Ventures, the same entity that owns Optima Stemmons. Per the sale agreement, 87STE Lending issued a loan of $5.7 million for the benefit of 8787 Ricchi, which 87STE Lending ostensibly paid to Optima Stemmons. 8787 Ricchi executed the Promissory Note and Deed of Trust as part of the closing.

The Government seeks a restraining order to preserve the Defendant Asset by (1) directing that the original signed Promissory Note and Deed of Trust be deposited with the United States Marshall's Service ("USMS") to hold in escrow pending the outcome of this action; (2) directing that all payments due under the Promissory Note, including principal, interest, and fees, be direct to the USMS to hold in escrow pending the outcome of this action; (3) enjoining the transfer, assignment, or dissipation of the Defendant Asset.

## II. The Basis for Forfeiture

The Complaint sets out in detail the basis for finding probable cause that the Defendant Asset is subject to forfeiture; this section is a brief summary of those allegations.

Kolomoisky and Boholiubov owned and controlled PrivatBank in Ukraine. Dkt. 1 at ¶¶ 22-31. They used their position to cause the bank to issue hundreds of millions of dollars in loans to entities they owned, under false pretenses, beginning in 2008 and continuing until 2016, when the bank was nationalized after it lost billions as part of their scheme. *See, e.g.*, Dkt. 1 at ¶¶ 31-38. Their actions constituted embezzlement and fraud; the loan applications contained numerous material misstatements. *See, e.g.*, Dkt. 1 at ¶¶ 41-53. After their disbursement, the loan funds were transferred through dozens of entities that had accounts at PrivatBank's Cyprus branch. Dkt. 1 at ¶¶ 73-80. The transfers were designed to disguise the source, nature, ownership, and control of the misappropriated funds. Dkt. 1 at ¶ 80.

Some of the money was transferred to the United States, where it was invested by Kolomoisky and Boholiubov's associates, Korf and Laber, using a network of companies they had created for the purpose, generally using a variation of the name "Optima." Dkt. 1 at ¶¶ 81-83.

In this action, the Government alleges that the Defendant Asset is involved in and represents the proceeds of that scheme. The funds used to purchase Stemmons Towers came from several different entities and were filtered through companies associated with Kolomoisky and Boholiubov. *See, e.g.*, Dkt. 1 at ¶¶ 94-102. Funds then were transferred to the United States, to an account at Benchmark Bank in the United States to complete the purchase of Stemmons Towers. Dkt. 1 at ¶ 102.

In 2008, Korf and Laber created the entity Optima Stemmons, LLC to purchase Stemmons Towers, located at 8777 and 8787 North Stemmons Freeway, Dallas, Texas. Dkt. 1 at ¶¶ 91-93. Optima Stemmons completed the purchase of Stemmons Towers for approximately $7.6 million. Dkt. 1 at ¶ 93. Korf signed the paperwork associated with the purchase. *Id.*

As alleged in related case 1:20-cv-23278-MGC, in 2010 and 2011, Kolomoisky and Boholiubov caused multiple loans to be issued by PrivatBank when the loan applications were replete with misrepresentations. *See, e.g.*, Dkt. 1 at ¶¶ 115-126. Money from those loans was sent through accounts held by entities ultimately owned by Boholiubov and Kolomoisky at PrivatBank's Cyprus branch. Dkt. 1 at ¶¶ 126-132. It was then used to purchase the CompuCom Campus in Dallas, Texas, by Optima 7171 LLC. Dkt. 1 at ¶ 81, 131-33.

The CompuCom Campus generated millions of dollars in rent for Optima 7171: from January 2011 to February 2018, CompuCom paid approximately $45 million to Optima 7171. Dkt. 1 at ¶ 140. Because the CompuCom Campus was purchased with criminal proceeds, profits or funds generated by the property and paid to Optima 7171 also became criminal proceeds.

Optima 7171 transferred funds constituting criminal proceeds through Optima Ventures to Optima Stemmons. Dkt. 1 at ¶¶ 105-114. Optima Stemmons then used those funds to pay for maintenance, improvement, and expenses on the Stemmons Towers. *Id.* As detailed in the Complaint, examples of those transfers include:

| | Date | Optima 7171 transfers to Optima Ventures | Optima Ventures transfers to Optima Stemmons | Optima Stemmons use of funds |
|---|---|---|---|---|
| **1.** | 1/10/2011 | $469,751 | $125,000 | |
| | 1/18/2011 | | | Towards $212,651 Dallas Tax Bill |

| | | | | |
|---|---|---|---|---|
| **2.** | 1/4/2012 | $554,046 | | |
| | 1/17/2012 | | $180,000 | |
| | 1/20/2012 | | | Towards $216,889 County Tax Bill |
| **3.** | 4/2/2013 | $558,670 | | |
| | 4/4/2013 | | $398,336 | |
| | 4/8/2013 | | | Towards $385,054 Taurus Commercial, Inc. construction for improvements |
| **4.** | 1/5/2015 | $676,617 | | |
| | 1/6/2015 | | $25,000 | |
| | 1/12/2015 | | $61,000 | |
| | Through 1/23/2015 | | | Utility bills, maintenance, and security |
| **5.** | 4/2/2015 | $680,915 | | |
| | 4/8/2015 | | $208,000 | |
| | 4/13/2015 | | | Portion of $243,574 County Tax Bill, utility bills; other expenses related to Stemmons Tower |
| **6.** | 7/5/2017 | $765,071 | | |
| | 7/19/2017 | | $150,000 | |
| | 8/1/2017 through 8/22/2017 | | | Pay mortgage; $16,000 on security system; $10,000 on maintenance and janitorial services |
| **7.** | 1/4/2018 | $111,952 | | |
| | 1/10/2018 | $16,028 | | |
| | 1/18/2018 | | $65,000 | |
| | 1/30/2018 | | | $51,000 on maintenance |

In this way, proceeds derived from misappropriation from PrivatBank funded the operation of Stemmons Towers, including paying for the maintenance and improvement of the property, paying a mortgage, and paying property taxes. Dkt. 1 at ¶ 105.

In 2019, Optima Stemmons sold Stemmons Towers to 8787 Ricchi LLC for approximately $6.5 million. Dkt. 1 at ¶ 143. The 2019 sale of Stemmons Towers involved a seller's loan in the principal amount of $5.7 million, plus interest. Dkt. 1 at ¶ 144-145. On December 19, 2019, 8787 Ricchi executed the Promissory Note, which required that 8787 Ricchi make interest payments for the first five years of the agreement, at which time the principal would come due. Dkt. 1 ¶ 145. The interest rate was set at 5% per year, or $23,750 per month, though payments were partially deferred during an initial 18-month discount

period. *Id.* The sale also involved 8787 Ricchi executing the Deed of Trust securing the note and granting a security interest in Stemmons Towers, naming Optima Stemmons as the trustee and 87STE as the lender. Dkt. 1 at ¶ 147. The sale transformed the proceeds of the misappropriation from PrivatBank into the promissory note for $5.7 million plus interest, secured by the Deed of Trust.

## III. Restraint of the Property is Proper and Necessary

Section 983(j)(1)(A) of Title 18, United States Code authorizes the United States to seek, and the Court to issue, a restraining order or protective order over the Defendant Asset. The statute provides:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture [. . .] upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture[.]

18 U.S.C. § 983(j)(1)(A).

The Court also has wide latitude to enter an order appropriate to the facts and circumstances of the case, pursuant to Rule G(7)(a), which provides that, when defendant property is not in the government's possession, the court "may enter *any order necessary* to preserve the property, to prevent its removal or encumbrance, or to prevent its use in a criminal offense." (Emphasis added).

Such a restraining order may be issued *ex parte*. *See United States v. Bissell*, 866 F.2d 1343, 1349 (11th Cir. 1989) (a restraining order pursuant to 21 U.S.C. 853(e) can be issued *ex parte* once an indictment has issued).[2] Section 983(j)(1)(A) includes no requirement of pre-restraint notice or hearing.[3] *See U.S. v. Residence & Real Prop. Located at 24227 Gulf Bay Road*,

---

[2] Though *Bissell* dealt with restraining orders pursuant to 21 U.S.C. § 853(f), because of the similarity in the statutes, the case law applicable to criminal forfeiture restraining orders is equally applicable to restraining orders issued under Section 983(j). *See Melrose East*, 357 F.3d at 499 (applying section 853(e) case law to section 983(j) restraining order).

[3] That is distinct from the statutory provision governing a request for a *pre-complaint* restraining order, 18 U.S.C. § 983(j)(1)(B), which provides for "notice to persons

2006 WL 2091764, at *2 (S.D. Ala. July 25, 2006). Where a restraining order is "requested contemporaneously with the filing of the forfeiture complaint, issuance of the restraining order [i]s authorized" without a hearing. *United States v. Melrose E. Subdivision*, 357 F.3d 493, 499 (5th Cir. 2004).

Here, a restraining order should issue because the allegations in the Complaint make out sufficient probable cause to believe that the Defendant Asset is forfeitable to the United States, and no further hearing or showing is necessary. Failure to restrain, preserve, and properly account for the Defendant Asset (particularly possession of the Promissory Note and receipt of the payments under the Note) will likely result in its irrevocable loss and will render it unavailable for forfeiture. Without a restraining order, Optima Stemmons LLC, 87STE Lending LLC, or other related persons or entities could transfer the Defendant Asset and continue to collect loan payments and dissipate them. Given the complex network of transactions undertaken to acquire the Defendant Asset, individuals with that expertise could try to further secrete and launder the Defendant Asset to avoid forfeiture. Such actions could make it impossible to seize—and ultimately forfeit—the proceeds of embezzlement and fraud and property involved in the money laundering conspiracy used to facilitate and launder the proceeds of that criminal scheme. Moreover as the potential claimants have made clear in the related forfeiture actions, they wish to dissipate otherwise forfeitable assets to pay for counsel and to pay business costs for their related entities, neither of which is permissible under Section 981. *See, e.g.*, 1:20-cv-23279, Dkt. 22 at 7, 17 (asking the Court to lift the restraining order in the PNC Plaza action so that claimant could "fund[] other operations, e.g., paying the mortgage holder of [claimant's] vacant lot.").

The Government therefore seeks custody of the Promissory Note and Deed of Trust themselves so that they cannot be transferred or assigned. It also seeks a restraining order that will permit 8787 Ricchi to continue to make payments due under the Promissory Note, but

---

appearing to have an interest in the property and opportunity for a hearing" before a restraining order can issue. Section (j)(1)(A), which governs applications made post-complaint, contains no such language. *See United States v. Melrose E. Subdivision*, 357 F.3d 493, 499 (5th Cir. 2004). In this way, Sections (j)(1)(A) and (j)(1)(B) mirror the provisions governing restraining orders in criminal cases, which require notice and a hearing when the Government seeks a restraining order before, but not after, obtaining an indictment. *See* 21 U.S.C. §§ 853(e)(1)(A) (post-indictment) and 853(e)(1)(B) (pre-indictment).

to the United States, to hold in escrow. Finally, it asks that the Court enjoin the transfer and assignment of the Promissory Note and Deed of Trust, so that even if they are in the custody of the United States, they and their associated rights may not be otherwise dissipated. This will ensure that the value of the Defendant Asset is preserved and not diminished, transferred, or dissipated.

**VI. The Requested Order**

For the foregoing reasons, the Government requests that this Court enter a restraining order allowing for the continued payment on the note to the United States, while preventing waste, dissipation, or disappearance of the Defendant Asset, with the following terms:

a. 87STE Lending LLC, Optima Stemmons LLC, Optima Ventures LLC, Mordechai Korf, Uriel Laber, and their attorneys, agents, and anyone acting on their behalf, and all persons or entities acting in concert or participation with any of the above, and all persons and entities having actual knowledge of the order, shall not directly or indirectly transfer, sell, assign, pledge, distribute, encumber, attach, or dispose of in any manner the Promissory Note and Deed of Trust, or any rights and remedies thereunder except to the United States. Neither shall they take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of the Defendant Asset, including any action that would increase costs or reduce revenues unless approved in writing by the Government.

b. The holder of the Defendant Asset Promissory Note shall immediately deposit with the United States Marshall's Service the original wet-ink signed Promissory Note to be held in escrow pending the outcome of this action;

c. All rights and remedies under the Promissory Note and Deed of Trust are hereby assigned to the United States pending the outcome of this action, and all payments due under the Promissory Note and Deed of Trust shall be made directly to the United States Marshall's Service, to be held in escrow pending the outcome of this action;

d. Except as otherwise provided in the Order, all persons, financial institutions, and other entities who have or assert any access to, interest in, control over, or legal claim to the Defendant Asset, and all such persons' or entities' agents, employees, attorneys, family members, and those persons in active concert or participation with them, shall be restrained, prohibited, and enjoined from attempting or taking any action that could affect the

availability, marketability, or value of the Defendant Asset, including but not limited to, selling, conveying, transferring, bailing, assigning, pledging, collateralizing, encumbering, wasting, secreting, damaging, diminishing the value of, disposing of, or removing from the jurisdiction of this Court, all or any part of their interest, direct or indirect, in the Defendant Asset, unless approved in writing by the United States.

A proposed order is filed herewith.

Respectfully submitted,

DATED: January 20, 2022

DEBORAH CONNOR, CHIEF
MONEY LAUNDERING & ASSET RECOVERY SECTION

By: */s/ Shai D. Bronshtein*
Shai D. Bronshtein (ID No. A5502665)
Rachel E. Goldstein
Trial Attorneys
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 616-5950
Shai.Bronshtein@usdoj.gov